IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT MITCHELL<br><br>    Plaintiff,<br><br>v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:10-cv-236 CW<br><br>Judge Clark Waddoups |

After his wife Mary Ann Mitchell died from an amniotic fluid embolism, a complication of childbirth, Robert Mitchell filed a claim with Hartford Life and Accident Insurance Company ("Hartford") under Mary Ann's Accidental Death Policy.  Hartford denied the claim, stating the death was not covered by the policy, and Mitchell filed suit.  The court holds that because the death did not involve "bodily injury" as defined by Utah law, the death fell outside the scope of the life insurance policy.  Furthermore, Mitchell's claim of bad faith is precluded by ERISA.  Therefore, Defendant Hartford's Motion for Summary Judgment is GRANTED.

## FACTS

The parties agree to all of the following facts.  Mitchell's deceased wife Mary Ann gave birth to a daughter on January 18, 2007, but developed heavy, persistent postpartum bleeding.  Her physician recommended surgery, to which both Robert and Mary Ann consented.  The doctor initially performed exploratory surgery but was not able to slow the bleeding, so he proceeded with a hysterectomy.  Mary Ann continued to bleed following the surgery and, despite several blood transfusions, she died of cardiac arrest within seven hours of giving birth.

Mary Ann's physician provided a final diagnosis of "Postpartum hemorrhage with disseminated intravascular coagulation ["DIC"], most likely caused from amniotic fluid embolism." Hartford's Opening Memorandum of Points and Authorities in Support of Its Motion for Judgment ("Memo in Support") at 6, Dkt No. 10 (Sept. 16, 2011). Mary Ann's death certificate indicated her death was "natural" and caused by postpartum hemorrhage, DIC, and amniotic fluid embolus. *Id.*

According to the medical treatises included in the administrative record, an amniotic fluid embolism "is a rare obstetric emergency in which amniotic fluid, fetal cells, hair, or other debris enter the maternal circulation, causing cardiorespiratory collapse." Administrative Record ("Record") at 56, Dkt No. 11 (Sept. 15, 2011). The condition is not well understood, and medical research has not yet explained why or how amniotic fluid embolisms occur. *See id.* at 55–70.

Hartford, which administers claims under a group policy, denied Mitchell's claim for life insurance, stating that "this complication of pregnancy [did] not constitute in and of itself an accidental injury." *Id.* at 7. The life insurance policy, which was an employer sponsored benefit governed by ERISA, provided that payment would be made "[i]f because of accidental Injury an Employee or a Dependent covered by this insurance sustains [Loss of Life (Accidental Death)] within 180 days after the date of an accident." *Id.* at 4. "Injury" is defined as "accidental bodily injury causing loss [of life] directly and independently of all other causes." *Id.*

After Hartford denied the request, Mitchell brought suit to compel payment, stating two causes of action: breach of contract and bad faith. Because the dispute centered on a group policy governed by ERISA, Hartford removed the suit to federal court.

Hartford moved for summary judgment, explaining the death clearly fell outside the terms of the insurance policy. Motion for Summary Judgment, Dkt No. 9 (Sept. 16, 2011). In his response, Mitchell agreed that there were no disputed facts and asked the court to enter summary judgment in his favor. Plaintiff's Memorandum in Opposition to Summary Judgment ("Memo in Opp.") at 16, Dkt No. 12 (Oct. 14, 2011). Hartford filed a Reply/Response, Hartford's Reply Memorandum in Support of Its Motion for Judgment, Dkt. No. 17 (Nov. 7, 2011), and Mitchell then filed a Reply of his own, Plaintiff's Memorandum in Reply to Opposition to Cross-Summary Judgment, Dkt No. 18 (Nov. 9, 2011).

There is no dispute that Mary Ann's life was insured by the group policy to the amount of $422,500. The issue before the court is whether her death, as a matter of law, was directly and independently caused by an accidental bodily injury as defined by the insurance policy and the applicable law.

## **STANDARD OF REVIEW**

The court ordinarily reviews the denial of ERISA plan benefits under a *de novo* standard. *Jewell v. Life Ins. Co.*, 508 F.3d 1303, 1308 (10th Cir. 2007). This review, however, is generally limited to the facts contained in the administrative record. *Id.* Therefore, under ERISA law, the court should review this case narrowly, determining whether, based on the evidence in the administrative record, the plan administrator made a correct decision. *Id.* The parties agree there are no disputed issues of fact precluding summary judgment. *See* Memo in Opp. at 2–11.

**LAW AND ANALYSIS**

A.   **Scope of the Life Insurance Contract**

The group policy covers deaths which occur "because of accidental Injury," Record at 9, and the policy defines "Injury" to mean "accidental bodily injury causing loss directly and independently of all other causes," Record at 2. The Tenth Circuit has explained that, under Utah law,[1] this language requires that three conditions must be met: 1) the existence of a "bodily injury," 2) which was "accidental" and 3) which caused the death "directly and independently of all other causes." *Winchester v. Prudential Life Ins. Co. of America*, 975 F.2d 1479, 1485 (10th Cir. 1992).

The first requirement, a "bodily injury," demands "some sort of external violence without which the injury would not have occurred." *Id.* at 1486. Because of the requirement of external violence, internal events such as heart attacks, strokes, and organ failures do not constitute bodily injury. *See id.* In contrast, the Utah Supreme Court has held that a post-operative embolism may constitute a "bodily injury" because it is precipitated by the external violence of a surgery. *Handley v. Mutual Life Ins. Co.*, 147 P.2d 319, 324 (Utah 1944).

Both parties agree that the amniotic fluid embolism caused Mary Ann's death. Hartford argues that there was no external violence because an amniotic fluid embolism is an internal complication associated with childbirth. In contrast, Mitchell argues that, by definition,

---

[1] ERISA does not preempt Utah law with respect to the meaning of an "accidental death" under a life insurance policy. *Winchester v. Prudential Life Ins. Co. of America*, 975 F.2d 1479, 1485 (10th Cir. 1992).

an amniotic fluid embolism, which consists of amniotic fluid or fetal debris entering the maternal circulatory system, is an event of external violence.

The court understands Mitchell's argument and agrees that the entry of amniotic fluid and fetal cells into the maternal bloodstream might be characterized as a violent occurrence. It does not, however, involve *external* violence. Amniotic fluid and fetal cells are generated by a pregnant woman within her own body. The transfer of that matter from one area of the body to another is not an external event.

The court has carefully reviewed the Administrative Record and has not found any evidence that the amniotic fluid embolism which caused Mary Ann's death was triggered by any external means. There is, for example, no evidence in the administrative record to support a finding that the exploratory surgery or the hysterectomy contributed to the amniotic fluid entering Mary Ann's circulatory system. Indeed, it appears that the processes that led to her death were underway well before the life-saving procedures were attempted. Therefore, whether or not the death was accidental and caused directly and independently by the embolism, it did not involve a bodily injury within the meaning of the insurance policy. Under Utah law, the death fell outside the scope of the group policy's coverage, and the administrator's decision to deny the claim did not constitute a breach of contract.

**B.     Bad Faith**

Bad faith claims are precluded by ERISA. *Kidneigh v. Unum Life Ins.*, 345 F.3d 1182, (10th Cir. 2003) (noting that a "state law bad faith cause of action against an ERISA provider is expressly preempted"). Mitchell has conceded that "ERISA preempts bad faith remedies for unreasonable conduct by an insurer." Memo in Opp. at 15. The law is clear and the parties do

not dispute its application. Therefore, the court grants summary judgment in favor of Hartford on Mitchell's claim of bad faith.

## **CONCLUSION**

Mary Ann's death was tragic, but, as a matter of law, it was not caused by violent external means. Therefore, the death was outside the scope of the life insurance policy administered by Hartford, and Hartford's failure to pay on the claim did not constitute a breach of contract. Furthermore, Mitchell's claim of bad faith is barred by ERISA law. Therefore, the court GRANTS Defendant's Motion for Summary Judgment[2] in its entirety.

DATED this 22nd day of March, 2012.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[2] Dkt No. 9 (Sept. 16, 2011).